# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01649-COA

JERMIE JACKSON                                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                               APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2019 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/20/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.

## SMITH, J., FOR THE COURT:

¶1. Jermie Jackson was convicted of aggravated domestic assault and sentenced to a term of ten years, with four years suspended and six years to serve in the custody of the Mississippi Department of Corrections. Finding no arguable issues on appeal, Jackson's appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Jackson was given additional time to file a supplemental brief pro se, but he did not do so. This Court's review of the record has revealed no reversible errors. Accordingly, we affirm.

## FACTS

¶2.    The incident at issue arose when Jackson contacted Crystal Hill, with whom he had a dating relationship, and asked her to return his "clipper bag," which was in her possession. Hill and Jackson agreed to meet at an apartment they were in the process of vacating in Winona, Mississippi. On the morning of March 18, 2018, Jackson knocked on the apartment door and asked Hill to talk. Hill refused to talk and opened the door just wide enough to hand him the "clipper bag." Jackson proceeded to shove the door open and began hitting her. Hill raised her arm to defend her face, and Jackson's fist came down and hit her arm. She felt a pop in her arm, and then her arm began to feel heavy. After the fight, they both walked out of the apartment, and Hill went to Tyler Holmes Memorial Hospital to have her arm examined, where she learned her arm was broken.

¶3.    At trial, Hill testified that Jackson assaulted her and caused her broken arm. Hill also stated that she and Jackson were dating at the time of the incident, and Jackson confirmed this relationship in his testimony. Marilyn Coleman, with whom Jackson also had a dating relationship, testified that she lives in Tuscaloosa, Alabama, and that Jackson had not been with her on March 18, 2018, and had not come to Tuscaloosa until the next morning. Coleman stated Jackson called her on the day of the incident and told her he had seen Hill that day and that the two had fought.

¶4.    At the close of the State's case-in-chief, Jackson filed a motion for a directed verdict. He argued the State failed to prove a prima facie case of aggravated domestic assault and that the circuit court erroneously admitted medical records and photos from Hill's hospital visit. After considering all the evidence in the light most favorable to the State, the circuit court

found the State had presented a prima facie case of aggravated domestic assault. The circuit court therefore denied Jackson's motion.

¶5. Jackson then took the stand in his own defense and testified he was not in Winona on March 18, 2018, but instead was in Tuscaloosa.

¶6. The jury convicted Jackson of aggravated domestic assault, and the circuit court sentenced him to serve ten years in the custody of the Mississippi Department of Corrections, with four years suspended and six years to serve. Jackson unsuccessfully moved for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, he appeals.

**DISCUSSION**

¶7. In *Lindsey*, the Mississippi Supreme Court established a specific procedure to be followed when "appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶18). First, appellate counsel must "file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)] . . . ." *Id*. Second, counsel must certify in his or her brief that

> there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id*.

¶8. Third, counsel must send a copy of his or her brief to the defendant, inform the

defendant that no appealable issues were found, and notify the defendant of the right to file a pro se brief. *Id*. Fourth, the appellate court will review the record and any pro se brief filed and determine if any arguable issue exists. *Id*. If an arguable issue exists, the court will require appellate counsel to submit supplemental briefing on that issue "regardless of the probability of the defendant's success on appeal." *Id*. Lastly, "[o]nce briefing is complete, the appellate court must consider the case on the merits and render a decision." *Id*.

¶9. Here, Jackson's appellate counsel has complied with the procedure set forth in *Lindsey*. After specifically listing the matters he considered, Jackson's appellate counsel "confirm[ed] that he has, on the date of the filing of [his] brief, mailed by first class mail, postage prepaid, a copy of [the] brief and correspondence informing Jermie Jackson that counsel finds no arguable issues in the record and that Appellant [Jackson] has the right to file a pro se brief."

¶10. After thoroughly reviewing the record, we find no arguable issues for appeal. Accordingly, we affirm Jackson's conviction and sentence.

¶11. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**